**BOULDER VALLEY SCHOOL DISTRICT R–2, and David Zeckser, Petitioners,**

v.

**Gary D. PRICE, Respondent.**

**No. 89SC406.**

Supreme Court of Colorado, En Banc.

Jan. 28, 1991.

Rehearing Denied Feb. 25, 1991.

Caplan and Earnest, Gerald A. Caplan, Alan J. Canner, Boulder, for petitioners.

William P. Bethke, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

This case involves a claim arising under 42 U.S.C. § 1983 (1982 ed.) brought by respondent Gary D. Price against the Boulder Valley School District and David Zeckser, the principal at Casey Junior High School. Price alleged that he was constructively discharged from his tenured teaching position without the opportunity for a hearing in violation of section 1983. After the jury returned a verdict in his favor, the trial court entered a judgment notwithstanding the verdict (JNOV). In *Price v. Boulder Valley School District R-2*, 782 P.2d 821 (Colo.App.1989), the court of appeals reversed the grant of JNOV, remanded the case to modify the judgment, and ordered a new trial on the issue of punitive damages. We affirm in part and reverse in part.

I

Price began teaching school in the Boulder school district in 1967 and was granted tenure in 1970. From that time until 1975, his performance was satisfactory. Starting in 1975, Price began to encounter personal difficulties. Price took a leave of absence from teaching for the 1977–1978 school year. In 1978, he returned to teach at Platt High School, but his personal problems significantly affected his work performance. In addition to failing to assign and post grades, Price failed to turn in a student-grade book and some keys at the end of the school term.

The following school year, Price began teaching at Casey Junior High School, under the supervision of Zeckser. His performance did not improve. Price failed to comply with various rules that all teachers were required to follow, including grading papers and posting grades, taking attendance and posting absent lists, submitting lesson plans and course outlines, and staying minimum hours at school. In late August 1979, Zeckser orally instructed Price to turn in the keys and the grade books from his previous teaching assignment and to meet the other requirements. Price failed to correct the problems. On October 2, 1979, Zeckser met with Price to discuss the situation. Price informed. Zeckser of certain personal problems and Zeckser reminded Price of the requirements of his job and the possibility of discipline if there were no improvements. Zeckser outlined this meeting in a memorandum dated October 12, 1979, to which Price responded with a letter expressing his thoughts about leaving teaching. Zeckser and Price may have had other informal discussions prior to Price's resignation.

On either October 19, or October 23, 1979, Price signed a letter of resignation.

On either date, or perhaps both, Zeckser entered Price's classroom, placed a typewritten letter of resignation on his desk, and discussed the possibility of his resigning. Price was told that if he did not sign the letter there would be a hearing. Price signed the resignation letter. The Boulder Valley School District (the District) accepted the resignation, and his employment was subsequently terminated.

Price brought suit under 42 U.S.C. § 1983 [1] against Zeckser and the District, alleging that he had been constructively discharged without a hearing in violation of his due process rights. The case was tried before a jury. The jury instructions stated that punitive damages could be assessed against Zeckser if the jury found "beyond a reasonable doubt" that he acted in reckless disregard of Price's rights. The jury returned two verdicts, one finding against the District in the amount of $60,000 and the other against Zeckser for $0. The jury did not award punitive damages.

The trial court entered a judgment notwithstanding the verdict (JNOV). The court of appeals reversed the trial court's grant of JNOV; remanded the case to modify the judgment to reflect joint and several liability; and ordered a new trial on the issue of punitive damages, requiring the use of a "preponderance of the evidence" standard.

We granted certiorari to determine whether the court of appeals engaged in fact finding and found facts that were not supported in the record, whether the burden of proof for awarding punitive damages in a section 1983 action in Colorado is "beyond a reasonable doubt" or "by a preponderance of the evidence," and whether the court of appeals erred in directing the trial court to amend the verdict to reflect that the defendants were jointly and sever-

1. Section 1983 provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 State courts have concurrent jurisdiction to entertain claims brought under 42 U.S.C. § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

ally liable. We affirm the court of appeals on the first issue, reverse on the second and third issues, and remand for a new trial.

## II

The petitioners contend that the court of appeals based its decision to reverse the JNOV upon certain facts that were without support in the record. We find it unnecessary to review this issue because, based on our reading of the record, the trial court's grant of JNOV was in error.

■ A JNOV may be entered only if a reasonable person could not reach the same conclusion as the jury, when viewing the evidence in the light most favorable to the party against whom the motion is directed. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 552 (Colo.1988). Every reasonable inference that may be drawn from the evidence must be drawn in favor of the non-moving party. *Durango School Dist. No. 9-R v. Thorpe*, 200 Colo. 268, 273, 614 P.2d 880, 884 (1980).

■ Price was required to show evidence of constructive discharge. Constructive discharge may occur without a formal firing, but the words or actions by the employer must "logically lead a prudent person to believe his tenure had been terminated." *Civil Rights Comm'n v. Colorado*, 30 Colo.App. 10, 16, 488 P.2d 83, 86 (1971) (quoting *National Labor Relations Bd. v. Trumbull Asphalt Co.*, 327 F.2d 841, 843 (8th Cir.1964) (quoting *Putnam v. Lower*, 236 F.2d 561, 566 (9th Cir.1956))). "The determination of whether the actions of an employer amount to a constructive discharge depends upon whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable, and not upon the subjective view of the individual employee." *Wilson v. Board of County Comm'n*, 703 P.2d 1257, 1259, 1260 (Colo.1985); *see also Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir.1982); *Junior v. Texaco, Inc.*, 688 F.2d 377, 379 (5th Cir.1982); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981). "To prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign." *Wilson*, 703 P.2d at 1259 (Colo.1985); *see also Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 372 (5th Cir.1981). In *Civil Rights Commission v. Colorado*, 30 Colo.App. 10, 488 P.2d.83 (1971), the court found a constructive discharge, but no discriminatory purpose, where a teacher signed a letter of resignation based on her superior's refusal to recommend her for rehiring. There was no duress or coercion to have the teacher sign the letter of resignation, but there was evidence that the teacher would not have resigned had she been able to receive a favorable recommendation.

■ The trial court's basis for granting JNOV was that a reasonable jury could not have found that Zeckser took deliberate action to make the working conditions intolerable as required for a constructive discharge. The court of appeals reversed, stating that the jury could have reasonably concluded that Zeckser's actions were deliberate and calculated to deprive Price of his employment without resort to the hearing to which he was entitled.

The evidence is in conflict as to whether Zeckser deliberately acted in such a way that Price would reasonably believe that his tenure had been terminated, and to what extent he knew about Price's psychological difficulties. The evidence also conflicts on the issue of whether the discussions between Price and Zeckser created working conditions so difficult or intolerable that Price had no other choice but to resign. Price stated that he felt he had no choice but to resign. Viewing the evidence in the light most favorable to Price, a reasonable jury could find that Price had been constructively discharged. Therefore, the reversal of the JNOV is affirmed, but the verdict is not reinstated for the reasons set out in Part IV.

## III

■ The trial court instructed the jurors that they could assess punitive damages

against Zeckser[2] if they found "beyond a reasonable doubt" that his actions were in reckless disregard of, or callous indifference to Price's constitutional rights. Based on this charge, the jury awarded no punitive damages.

The court of appeals ordered a new trial on punitive damages against Zeckser, citing *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), for the proposition that claims for punitive damage based on section 1983 require that the jury find that the misconduct of the defendant be proven only "by a preponderance of the evidence." We disagree.

In *Smith*, the United States Supreme Court did not address whether the plaintiff must show the occurrence of the misconduct beyond a reasonable doubt or by a preponderance of the evidence. Rather, *Smith* examined the type of misconduct that is sufficient for punitive damage awards. *Smith* held that reckless or callous, rather than intentional, disregard for the plaintiff's rights is the proper standard in determining whether punitive damages are merited.[3] "The focus is on the character of the tortfeasor's conduct—whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Id.* at 54, 103 S.Ct. at 1639.

Thus, the Court in *Smith* looked at the character of the conduct—whether the conduct required to award punitive damages was reckless or intentional, not the probability of the act having taken place. Implicit in the *Smith* opinion is that the occurrence of reckless misconduct must always be adequately proven; whether the proof of the occurrence should be beyond a reasonable doubt or by a preponderance of the evidence can be resolved by looking at section 1988, title 42, United States Code.[4]

The language of § 1988 directs courts to a three-step process in determining the rules of decision applicable to civil rights claims:

> "First, courts are to look to the laws of the United States 'so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect.' [42 U.S.C. § 1988] If no suitable federal rule exists, courts undertake the second step by considering application of state 'common law, as modified and changed by the constitution and statutes' of the forum state. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it not 'inconsistent with the Constitution and laws of the United States.' *Ibid.*"

*Wilson v. Garcia*, 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (quoting *Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984)).

█ We have looked to the laws of the United States and found neither any federal statute nor any "federal common law"[5]

---

2. A governmental entity, as opposed to an individual defendant, is immune from liability for punitive damages. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 269, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981).

3. Accordingly, the jury instructions in this case provided in Instruction No. 17 that the jury must find that the conduct of the defendant was "in reckless disregard of, or in callous indifference to, plaintiff's constitutional rights."

4. 42 U.S.C. § 1988 provides in relevant part: [I]n all cases where [the federal laws] are not adapted to the object [of the civil rights laws] ... the common law, as modified by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and

govern the said courts in the trial and disposition of the cause....

5. Federal common law is a body of decisional law developed by the federal courts untrammeled by the state court decisions. *O'Brien v. Western Union Telegraph Co.,* 113 F.2d 539, 541 (1st Cir.1940). Accordingly, the authority of the single published federal case that requires that the burden of proof for § 1983 cases be by a "preponderance of the evidence" does not create a "federal common law." *Bird v. Figel,* 725 F.Supp. 406 (N.D.Ind.1989). The issue of whether a "preponderance of the evidence" standard is required for punitive damages was not presented in *Rowlett v. Anheuser–Busch,* 832 F.2d 194 (1st Cir.1987); *Wren v. Spurlock,* 798 F.2d 1313 (10th Cir.1986); *McKinley v. Trattles,* 732 F.2d 1320 (7th Cir.1984); *Abraham v. Pekarski,* 728 F.2d 167 (3rd Cir.1984); *Savarese v. Agriss,* 883 F.2d 1194 (3rd Cir.1989); *Taylor v.*

governing the burden of proof for punitive damages in any civil rights action. In *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the United States Supreme Court declared that "[t]here is no federal general common law." [6] At common law [7] there were no punitive damages. *Murphy v. Hobbs*, 7 Colo. 541, 5 P. 119 (1884). The burden of proof at common law differed according to the action. The early common law required a higher standard than a "preponderance of the evidence" to prove compensatory damages in civil fraud actions. *See* Note, *Appellate Review in the Federal Courts of Findings Requiring More than a Preponderance of the Evidence*, 60 Harv.L.Rev. 111, 112 (1946). Finally, the common law burden of proof has been modified in other actions where important individual interests or rights are at stake. [8] A standard of proof higher than a preponderance of the evidence is justified in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. "The interests at stake in

those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." *Addington v. Texas*, 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). [9]

■ Because there are no specifically stated or otherwise relevant federal statutes governing the burden of proof standard for punitive damages, we proceed to the second step by considering application of state common law, as modified and changed by the constitution and statutes of the forum state.

The Colorado legislature has established the burden of proof for finding punitive damages in civil actions. The party asserting that claim must prove the wrong beyond a reasonable doubt. § 13–25–127(2), 6A C.R.S. (1987). In addition, although the issue was not raised, this court accepted without discussion the use of the "beyond a reasonable doubt" standard for punitive

*Canton*, 544 F.Supp. 783 (N.D.Ohio 1982); *Hopkins v. City of Wilmington*, 615 F.Supp. 1455 (Del.1985). The seventh circuit "has not taken a position on the standard of proof required for punitive damages in a § 1983 case." *Coulter v. Vitale*, 882 F.2d 1286 (7th Cir.1989); *see also Fogarty v. Greenwood*, 724 F.Supp. 545, 546 (N.D.Ill.1989) (the appropriate burden of proof to apply to punitive damage claims in § 1983 actions "is a still-open question—moreover, a question on which there is certainly room for differences of view").

6. "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1937). "Congress has no power to declare substantive rules of common law applicable in a State.... And no such clause in the Constitution purports to confer such power upon the federal courts." *Id.* It is an unconstitutional assumption of power for the federal courts to use their judgment as to what the rules of common law are. *Id.*, at 79, 58 S.Ct. at 823. "The common law so far as it is enforced in a State, whether called common law or not, is not the common law generally but the law of that State existing by the authority of that State without regard to what it may have been in England or anywhere else...." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1937) (quoting Justice Holmes in

*Black & White Taxicab Co. v. Brown & Yellow Taxicab Co.*, 276 U.S. 518, 533–34, 48 S.Ct. 404, 409, 72 L.Ed. 681 (1928).

7. The "common law" is all the statutory and case law background of England and the American colonies before the American revolution. *People v. Rehman*, 61 Cal.Rptr. 65, 253 Cal. App.2d 119 (1967). Common law consists of those principles, usage and rules of action which do not rest for their authority upon any express or positive declaration of the legislature. *Bishop v. United States*, 334 F.Supp. 415, 418 (S.D.Tex.1971).

8. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (proceeding to terminate parental rights); *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (involuntary commitment proceeding); *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (denaturalization).

9. In *Addington*, the United States Supreme Court rejected the appellant's contention that the state should have a higher burden of proving of mental illness than that received by the jury. The Court recognized the legitimate interests of both the state and the patient in civil commitment and accordingly fixed an intermediate burden of proof.

damages in section 1983 actions. *Higgs v. District Court,* 713 P.2d 840, 862 (1986); *Espinoza v. O'Dell,* 633 P.2d 455, 465 (Colo.1981), *cert. dismissed,* 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982).

Finally, section 1988 expressly provides that state law governs the disposition of civil rights cases when federal law is not adapted for the purposes, so long as the state laws are not inconsistent with the Constitution and the laws of the United States.[10] In *Howlett v. Rose,* —— U.S. ——, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), a section 1983 action, the Court considered the question of whether a state law defense of sovereign immunity is available to a school board otherwise subject to suit in a Florida court even though such a defense would not be available had the action been brought in a federal forum. In answering the question in the negative, the Court noted that the following principles are fundamental to a system of federalism in which the state courts share responsibility for the application and enforcement of federal law:

> The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it the requirement that the State create a court competent to hear the case in which the federal claim is presented. The general rule 'bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.' .... The States thus have great latitude to establish the structure and jurisdiction of their own courts.... In addition, States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law....

*Id. Howlett v. Rose,* 110 S.Ct. at 2441 (quoting Hart, *The Relations Between State and Federal Law,* 54 Colum.L.Rev.

489, 508 (1954); (citations omitted)). In the absence of any persuasive argument that Colorado law is inconsistent with the purposes of section 1983, the state law will be applied. *See Smith,* 461 U.S. at 51, 103 S.Ct. at 1638.

The primary purpose of section 1983 and punitive damage awards is to deter future egregious conduct. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 268, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981). The Court in *Smith* questioned the premise that potential section 1983 defendants will be deterred from future egregious conduct based upon the standards of punitive damages. *Smith,* 461 U.S. at 50, 103 S.Ct. at 1637. Rather, the Court assumed that most potential section 1983 defendants "are guided primarily by the underlying standards of federal substantive law" and that one "who desires clear guidance on how to do his job and avoid lawsuits can and should look to the standard of actionability in the first instance." *Id.* The deterrent purposes of section 1983 are furthered neither by lowering the degree of misconduct sufficient to award punitive damages nor by lowering the burden of proving the commission of the conduct. Thus, the state law standard requiring that the plaintiff prove that the defendant committed the reckless conduct "beyond a reasonable doubt" is not inconsistent with the purposes of section 1983.

State laws applicable to section 1983 actions have been accepted despite the lack of uniformity that results.[11] While section 1983 does provide a 'uniquely federal remedy,' "[t]hat a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us." *Robertson v. Wegmann,* 436 U.S. 584, 584, 98 S.Ct. 1991, 1991, 56 L.Ed.2d 554 (1978). In *Robertson,* the Su-

---

**10.** *See Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *see also Johnson v. Railway Express Agency,* 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) (there is nothing "peculiar to a federal civil

rights action that would justify special reluctance in applying state law").

**11.** *See Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985) (state statutes of limitations applied to § 1983 actions).

**1092**

preme Court adopted the forum state's survivorship law[12] although it caused plaintiff's section 1983 action to abate because the Court found the federal law deficient and the state law not inconsistent with the policies of section 1983. The lower court based its decision to reject state law on the desirability for uniformity in the application of the civil rights laws. In reversing the lower courts' decision, the Court stated that

> whatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues.

*Id.* at 593–94, n. 11, 98 S.Ct. at 1997 n. 11.

The trial court did not err in instructing the jury that it must find beyond a reasonable doubt that Zeckser's conduct was in reckless disregard of, or callous indifference to Price's rights before it could assess punitive damages.

## IV

The jury found against both the District and Zeckser, but assessed damages only against the District. The court of appeals, citing *Morgan v. Gore*, 96 Colo. 508, 44 P.2d 918 (1935) and *Weeks v. Churchill*, 44 Colo.App. 520, 615 P.2d 74 (1980), stated that the jury committed prejudicial error in attempting to allocate or apportion liability for Price's damages. It characterized the jury's verdict as "technical error," and di-

rected the trial court to modify the verdict to make defendants jointly and severally liable. We reverse the court of appeals' ruling on this issue.

■ A jury verdict may be amended in matters of form, not substance. *Dysart Assoc. Architecture & Constr. v. Hoeltgen*, 728 P.2d 756, 758 (Colo.App.1986). A change in form corrects a technical error, while a change of substance is a change affecting the jury's underlying decision. *Id.*

Both *Morgan* and *Weeks* were based upon the same relevant facts, and both only corrected technical errors. In each case, the jury was instructed that it could find against plaintiff, against only one defendant, or against both defendants jointly. The jury instructions specifically stated that if both defendants were found liable, each would be liable for the entire loss. Despite these instructions, the jury found against both defendants and fixed separate amounts for damages. In both cases the verdicts were amended to reflect joint and several liability without affecting the juries' underlying decisions.

This case differs considerably from *Morgan* and *Weeks*. Here, the jury instructions neither specified that the jury could find against only one defendant nor specified that if both the defendants were found liable, the defendants would be jointly and severally liable. The jury was instructed that in order to find that plaintiff was constructively discharged, it had to find that "the defendants deliberately created or allowed working conditions to become so difficult or intolerable that the plaintiff had no reasonable choice but to quit;[13] and a

12. Louisiana's survivorship statute required that a § 1983 action would survive only in favor of the injured's spouse, parents, children, or sibling.

13. This instruction (Instruction No. 13) was misleading. It is the deliberate conduct of Zeckser in making the working conditions intolerable that is relevant. Zeckser may have been qualifiedly immune unless he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [Price]." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396

(1982) (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)); *see also Owen v. City of Independence*, 445 U.S. 622, 657, 100 S.Ct. 1398, 1419, 63 L.Ed.2d 673 (1980) ("The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability....").

The District's liability is based on whether its official adoption or promulgation of a policy statement, ordinance, regulation, or decision resulted in the unconstitutional action ["the official policy requirement"]. *Monell v. New York*

reasonable person under the same or similar circumstances would view the new working conditions as intolerable." Instruction No. 14 stated, "To the extent you find the Board of Education based its decision to accept plaintiff's resignation on the recommendation of the administration, including the recommendation of defendant David Zeckser you may look to Mr. Zeckser's intentions in determining the intentions of the district." [14] The jury was also instructed that compensatory damages were to be awarded for "the total amount of monetary loss incurred by the plaintiff," [15] but it did not specify against whom the total amount was to be assessed.

In addition, there were two verdict forms, providing two opportunities to assess damages. One specified that the jury could either find for the defendant Zeckser or for the plaintiff Price, and award compensatory and exemplary damages.[16] The other specified that the jury could either find for the defendant school district, or for the plaintiff Price, and award compensatory damages.[17] The jurors decided in Price's favor. They found damages, and in accordance with the instructions awarded

compensation to Price, assessing damages only against the District.

 Where the inconsistency of a verdict demonstrates the fact that the jurors did not understand the instructions, or were misled, any change in the verdict made by the court is a change of substance and not of form. *Harrison v. Nissen,* 119 Colo. 42, 199 P.2d 886, 889 (1948); *Wulff v. Christmas,* 660 P.2d 18, 20 (Colo.App. 1982). A court may not resolve an inconsistency by amending the verdict where it changes the underlying determination made by the jury. *Wulff,* 660 P.2d at 20.

 The instructions were misleading. The inconsistent verdicts may have resulted because the jurors followed the instructions and the verdict forms too literally. When they found in Price's favor, they were instructed on both verdict forms to specify this. They had no instruction stating that it was necessary to mark only one verdict form for plaintiff, or in the alternative, that only one defendant may have been liable. The confusing verdict forms and the conflicting answers do not sufficiently disclose the jury's intent. Any change made by the court on this jury

*City Department of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Thus, the District's liability is based upon its granting Zeckser the authority to establish policy concerning teachers' employment, i.e. to accept letters of resignation and to require that Price perform his job or be subjected to a hearing on the matter. *See Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611.

14. This instruction is also misleading. It imposes vicariously upon the District any intent Zeckser had to make the working conditions intolerable. Yet, in *Monell,* the doctrine of respondeat superior, which makes the employer liable without fault on his part for the torts committed by his employees in the furtherance of their employment, was rejected for section 1983 actions. 436 U.S. at 691–94, 98 S.Ct. at 2036–37.

"The 'official policy' requirement [of *Monell* ] was intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which it is actually responsible." *Pembaur,* 475 U.S. at 479–480, 106 S.Ct. at 1298.

15. Instruction No. 15 states in relevant part:

To the extent that damages have been proven by a preponderance of the evidence you shall award as compensatory damages the *total amount of monetary loss* incurred by the plaintiff as a result of the deprivation of plaintiff's constitutional rights including lost wages and benefits, and for any emotional harm caused by the deprivation of plaintiff's constitutional rights.
(Emphasis added.)

16. The first verdict form was divided into two parts. Part A stated: "We, the jury, find for the plaintiff, Gary D. Price and award damages of $__, and exemplary damages of $__ against the defendant David Zeckser." The jury filled in the blanks with "$0" and "$0."

Part B stated: "We, the jury find for the Defendant, David Zeckser, and against the Plaintiff, Gary D. Price."

17. The second verdict form was also divided into two parts. Part A stated: "We, the jury, find for the plaintiff, Gary D. Price and award damages of $__ against the Defendant Boulder Valley School District Re–2."

The jury filled in the blank with "$60,000." Part B stated: "We, the jury find for the Defendant Boulder Valley School District Re–2 and against the Plaintiff, Gary D. Price."

verdict would be a change of substance and not of form.

■ The issues of liability and damages in this case are so intertwined that the proper resolution is to have a new trial on all the issues. *Wulff*, 660 P.2d at 20; *Kistler v. Halsey*, 173 Colo. 540, 481 P.2d 722, 724 (1971).

## V

For the foregoing reasons, we affirm the court of appeals reversal of the JNOV. We reverse the court of appeals modification of the jury verdict to reflect joint and several liability. Finally, we reverse the court of appeals ruling that the burden of proof for awarding punitive damages in section 1983 actions is by a "preponderance of the evidence." Accordingly, the case is remanded to the court of appeals for remand to the district court for further proceedings consistent with this opinion.

LOHR, J., concurs in part and dissents in part.

KIRSHBAUM and MULLARKEY, JJ., join in the concurrence and dissent.

ERICKSON, J., concurs in part and dissents in part.

Justice LOHR concurring in part and dissenting in part:

I concur in part II of the majority opinion, affirming the Colorado Court of Appeals' reversal of the judgment notwithstanding the verdict, and in part IV, reversing the court of appeals' determination that the verdict be modified to make the defendants jointly and severally liable. I disagree, however, with the court's analysis in part III, in which it adopts section 13–25–127(2), 6A C.R.S. (1987), as the burden of proof governing punitive damages under 42 U.S.C. § 1983 (1988). Section 13–25–127(2) permits punitive damages only when the jury finds "beyond a reasonable doubt" that a defendant's actions satisfy the relevant standard of conduct for award of such damages. I do not believe that Colorado's statutory burden of proof is applicable to section 1983 claims. First, federal common law governs punitive damages under section 1983, so uniform federal damages standards displace any state punitive damages rules. Second, the Colorado burden of proof for punitive damages is incompatible with the section 1983 punitive damages remedy. I would hold that "preponderance of the evidence" is the burden of proof for punitive damages in section 1983 actions, based on federal common law.

## I.

Section 1983 creates "a species of tort liability" to remedy violations of federal civil rights by those wielding state authority. *Smith v. Wade*, 461 U.S. 30, 34, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983) (quoting *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978)). That section provides "a uniquely federal remedy," *Mitchum v. Foster*, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972), that encompasses all necessary and appropriate remedies, *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969), and includes punitive damages, *Carlson v. Green*, 446 U.S. 14, 22, 100 S.Ct. 1468, 1473–74, 64 L.Ed.2d 15 (1980). Thus, the burden of proof for punitive damages, whether drawn from federal or state sources, is a federal standard responsive to the injury inflicted by the deprivation of a federal right. *Sullivan*, 396 U.S. at 240, 90 S.Ct. at 406. The federal rights protected by section 1983 have the same content in each state; the remedy for their deprivation should not vary with the forum.

The federal cases fashioning the section 1983 punitive damages remedies have created uniform federal rules. In *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the United States Supreme Court examined the degree of misconduct justifying the assessment of punitive damages. The Court analyzed general common law principles concerning punitive damages and concluded that in the majority of the states, "punitive damages in tort cases may be awarded not only for actual intent to injure or evil motive, but also for recklessness, serious indifference to or dis-

regard for the rights of others, or even gross negligence." *Id.* at 48, 103 S.Ct. at 1636. The Court then adopted the "reckless or callous indifference" standard of conduct as the threshold of liability in section 1983 actions. *Id.* at 56, 103 S.Ct. at 1640. Although state common law informed the Court's decision, the Court did not adopt the local standard of conduct of the forum state. Instead, the Court adopted a uniform federal standard. Even the *Smith* dissent did not question the propriety of a uniform federal punitive damages standard. This uniform federal standard is necessarily inconsistent with the incorporation of the punitive damages standard of conduct of the forum state.

Local state restrictions on punitive damages have been repeatedly rejected in favor of uniform federal punitive damages rules. Punitive damages may be awarded under section 1983 even when local state law would bar their recovery. *Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir.1981) (Colorado standards for evaluating excessiveness of punitive damages inapplicable); *Thompson v. Village of Hales Corners*, 115 Wis.2d 289, 340 N.W.2d 704, 711 (1983) (state ceiling on liability inapplicable to section 1983 actions). A section 1983 plaintiff may recover punitive damages without receiving compensatory damages, *see Carlson v. Green*, 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468, 1473 n. 9, 64 L.Ed.2d 15 (1979),[1] despite contrary local law. *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir.1989). In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981), the Court held that municipalities are immune from punitive damages in section 1983 actions, an immunity conferred by federal law rather than state law.

Uniform federal rules govern the availability, scope, standard of actionable conduct, municipal immunity, ceilings, and other criteria concerning damage remedies in section 1983 actions. The "federal common law of damages" has imposed uniformity when enforcing the Civil Rights Act. *Erwin*, 872 F.2d at 1299 (federal law allows punitive damages award despite no compensatory damages award and despite state law to the contrary); *Savarese v. Agriss*, 883 F.2d 1194 (3d Cir.1989) (federal law controls availability of prejudgment interest). The burden of proof would be a peculiar omission from this federal common law; in fact, lower federal courts have recognized that federal rules control the burden of proof for punitive damages. *Coulter v. Vitale*, 882 F.2d 1286, 1289 (7th Cir.1989) (federal standard for burden of proof, not Illinois's standard, governs § 1983 punitive damages awards; failure to object to jury instructions made it unnecessary to delineate the federal standard); *Bird v. Figel*, 725 F.Supp. 406, 411–12 (N.D.Ind.1989). Furthermore, because several states bar punitive damages awards, *see* 1 J. Ghiardi & J. Kircher, *Punitive Damages: Law & Practice*, §§ 4.07–4.12, 4.19 (1985 & 1990 Supp.) (listing states that bar punitive damages), a federal rule on the burden of proof for punitive damages must be developed for use in those states.

The majority holds, however, that state law should be applied by reason of 42 U.S.C. § 1988 (1988). That statute provides that protection and vindication of civil rights shall be governed by "the laws of the United States, so far as such laws are suitable to carry the same into effect" but that the state law of the forum governs civil rights actions "in all cases where [the federal laws] are not adapted to the object, or deficient in the provisions necessary to furnish suitable remedies...." *Id.*[2] Sec-

---

1. In *Carlson v. Green*, the United States Supreme Court noted that "punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury." 446 U.S. at 22 n. 9, 100 S.Ct. at 1473 n. 9.

2. 42 U.S.C. § 1988 states as follows:

The jurisdiction in civil and criminal matters conferred on the district court by the provisions of title 13, 24 and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or

tion 1988 envisions a three step process, *Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985).[3] In the initial step, as it applies to punitive damages, a court must determine whether federal law is suitable to give effect to the section 1983 punitive damages remedy. Because the federal common law of damages provides the remedy, the section 1988 process terminates, and the consideration of the applicability of state law is unnecessary. "[R]esort to state law—the second step in the process—should not be undertaken before principles of federal law are exhausted." *Wilson,* 471 U.S. at 268, 105 S.Ct. at 1943. The uniquely federal nature of the punitive damages remedy requires uniformity, and the federal courts have responded by crafting uniform federal puni-

tive damages rules.[4] Thus, the federal common law of damages leaves no room for incorporation of local state rules on the burden of proof.[5]

## II.

The Colorado punitive damages law does not embody the federal common law of damages for section 1983 actions, for it is incompatible with the policies and purposes underlying that statute. Colorado has taken a restrictive approach towards the imposition of punitive damages. At the time of the trial, the jury could award reasonable punitive damages in appropriate cases only when the injury complained of was "attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard

---

are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

3. The United States Supreme Court described the three steps as follows in *Wilson v. Garcia,* 471 U.S. at 267, 105 S.Ct. at 1942:

"First, courts are to look to the laws of the United States 'so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect.' [42 U.S.C. § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state 'common law, as modified and changed by the constitution and statutes' of the forum state. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.' *Ibid.*"

Quoting *Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984) (brackets in *Wilson*).

4. Although *Basista v. Weir,* 340 F.2d 74, 87 (3d Cir.1965), commented that the only perceived

deficiency in the federal common law of damages was with respect to punitive damages, the court went on to state that "we cannot conclude that the federal common law may be applied in respect to compensatory or even nominal damages while state law ... would be applicable on the issue of exemplary or punitive damages. To so hold would be to create a legal hybrid of an incredible and unworkable kind." *Id.* Furthermore, since 1965, the federal courts have developed to a considerable extent the punitive damages feature of the federal common law of damages. *See, supra* p. 1095.

5. The United States Supreme Court has applied state law to § 1983 actions in only two areas: state survival statutes, *Robertson v. Wegmann,* 436 U.S. 584, 594, 98 S.Ct. 1991, 1997, 56 L.Ed.2d 554 (1978), and state statutes of limitation governing § 1983 actions, *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). In many cases the Court has decided issues concerning rights and remedies not explicitly resolved by § 1983 without any reference to § 1988. *E.g., Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982) (exhaustion of state remedies not a prerequisite to a § 1983 action); *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (proximate cause); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) (causation). *Cf. Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (accrual date for § 1981 cause of action); *see generally* Beermann, *A Critical Approach to Section 1983 with Special Attention to Sources of Law,* 42 Stanford L.Rev. 51, 57–65 (1989).

of the injured party's rights and feelings...." § 13–21–102, 6A C.R.S. (1985).[6] The party seeking punitive damages was required to prove "beyond a reasonable doubt the commission of a wrong under the circumstances set forth in section 13–21–102 [fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings]." *Id.* at § 13–25–127(2). Section 13–21–102, 6A C.R.S. (1985), enacted in 1889, displaced the law created by earlier cases completely banning punitive damage awards. *See Greeley, S.L. & P. Ry. v. Yeager,* 11 Colo. 345, 350, 18 P. 211, 214 (1888); *Murphy v. Hobbs,* 7 Colo. 541, 5 P. 119 (1884).

The statutes governing punitive damages awards in Colorado at the time of the trial in the present case reflected Colorado's historical and continuing restrictions on punitive damages. Punitive damages are available only pursuant to statute and therefore are not recoverable in equity actions. *Kaitz v. District Court,* 650 P.2d 553, 556 (Colo.1982). A major legislative purpose underlying section 13–21–102 as it existed at the time of the trial was to avoid purely punitive civil damages awards. *Wagner v. Dan Unfug Motors, Inc.,* 35 Colo.App. 102, 106, 529 P.2d 656, 659 (1974). In addition, the Colorado courts have strictly examined punitive damages awards to ensure they were not excessive. *See* Comment, *Exemplary Damages—In Colorado—Punitive or Puny?,* 35 Colo.L.Rev. 394, 394–96 (1963) (cases generally limit punitive damages awards to the amount of compensatory damages). Colorado's restrictive policies conflict with the liberal availability of the section 1983 punitive damages remedy. *See Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123

(1988). (The section 1983 remedy must "be 'accorded a sweep as broad as its language.'" (quoting *United States v. Price,* 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966))). "The importation of the policies and purposes of the States on matters of civil rights is not the primary office of the borrowing provision in § 1988...." *Wilson v. Garcia,* 471 U.S. at 269, 105 S.Ct. at 1943.

At the time of trial, Colorado required fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings to impose punitive damages, a higher degree of misconduct than the section 1983 threshold standard of reckless disregard or callous indifference. *See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Wanton and reckless conduct creates a substantial risk of harm to another and "is *purposefully* performed with an *awareness* of the risk in disregard of the consequences." *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 215 (Colo.1984) (emphasis added). Thus, the conduct must be performed with "an evil intent" or with "wanton and reckless disregard ... evidenc[ing] a wrongful motive." *Pizza v. Wolf Creek Ski Development Corp.,* 711 P.2d 671, 684 (Colo. 1985) (quoting *Frick v. Abell,* 198 Colo. 508, 511, 602 P.2d 852, 854 (1979), and *Ress v. Rediess,* 130 Colo. 572, 579, 278 P.2d 183, 187 (1954)). This standard of evil intent or wrongful motive exceeds the section 1983 threshold. Unlike other tort plaintiffs in Colorado, section 1983 plaintiffs may recover punitive damages despite receiving no compensatory damage award. *Carlson v. Green,* 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468, 1473 n. 9, 64 L.Ed.2d 15 (1980); *Erwin v.*

---

6. Three months after the trial, Colorado implemented an even more restrictive policy governing punitive damage awards. The standard of conduct was changed to "circumstances of fraud, malice, or willful and wanton conduct ...," and the amount of punitive damages may not exceed the amount of actual damages, § 13–21–102(1)(a), 6A C.R.S. (1987), although the court may increase the punitive damages award to three times the actual damages for egregious conduct by the defendant during the pendency of the case, § 13–21–102(3). The injured party receives only two-thirds of the punitive damages award, with the other one-third going to the state general fund. *Id.* at § 13–21–102(4). A party's financial status may not be considered in determining the appropriateness or amount of the punitive damages. *Id.* at § 13–21–102(6). These additional restrictions widen the disparity between Colorado's punitive damages policy and section 1983. Most of these new provisions have been rejected by the federal courts in determining the contours of the section 1983 punitive damages remedy. *See* cases cited later in text, *infra* pp. 1097–98.

*County of Manitowoc,* 872 F.2d 1292, 1299 (7th Cir.1989). *Garrick v. City & County of Denver,* 652 F.2d 969, 971 (10th Cir. 1981), held the Colorado standards on excessive punitive damages inapplicable to section 1983 actions. These conflicts between the Colorado punitive damages policy and the section 1983 remedy illustrate the incompatibility between the Colorado punitive damages provisions and the federal common law of damages.

Utilization of Colorado's elevated burden of proof in section 1983 actions is inappropriate in light of this incompatibility. The third step of the process of applying section 1988 requires the rejection of state law when that law is inconsistent with federal law. *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943. The "beyond a reasonable doubt" burden of proof is an integral part of the Colorado punitive damages system, and embodies Colorado's restrictive policy. Because that policy conflicts with the liberal federal policy, Colorado's burden of proof cannot be applied in section 1983 actions.[7]

The "beyond a reasonable doubt" burden of proof for punitive damages is particularly inappropriate in civil rights cases. The 1871 Congress that enacted section 1983 held a mistrust for the factfinding processes of state institutions. *See Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 506,

102 S.Ct. 2557, 2563, 73 L.Ed.2d 172 (1982) (discussing legislative history). In fact, Congress granted federal court jurisdiction for section 1983 because "federal courts would be less susceptible to local prejudice and to the existing defects in the factfinding processes of the state courts." *Id.* These factfinding defects would prevent aggrieved parties from vindicating their civil rights in the state forum. An extremely elevated burden of proof would compound the perceived defects. The additional obstacle of an elevated burden of proof is unwarranted given the Congress's mistrust of the factfinding process. A very demanding burden of proof[8] severely limits the availability of punitive damages. However, punitive damages are especially appropriate to redress violations by government officials of citizens' constitutional rights.[9] *Carlson v. Green,* 446 U.S. 14, 22, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980). The severe limitation does not harmonize with this remedy.

### III.

The United States Supreme Court has not determined the burden of proof standard to be applied under federal common law to claims for punitive damages under section 1983. In view of the intent to allow

---

**7.** The issue of whether Colorado law governs the burden of proof for punitive damages was not presented in either *Espinoza v. O'Dell,* 633 P.2d 455, 465 (Colo.1981), *cert. dismissed,* 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982), or *Higgs v. District Court,* 713 P.2d 840, 862 (Colo.1986), cases on which the majority relies in part to support its adoption of a "beyond a reasonable doubt" burden of proof for punitive damages. *Espinoza* held that Colorado's bar to recovery of punitive damages in a wrongful death action does not apply to a section 1983 claim, and reversed the trial court's dismissal of the complaint for failure to state a claim upon which the requested relief could be granted. Although we referred to the Colorado burden of proof for punitive damages, that passing reference had no relevance to the issues before the court, for the case had not proceeded beyond the pleadings. In *Higgs,* the plaintiff recovered punitive damages after the court instructed the jury that the beyond a reasonable doubt burden applied. The trial court set aside the punitive damages award as grossly excessive. On appeal this court recited the Colorado burden of proof for punitive damages and held that sufficient

evidence supported the punitive damages award. Because the plaintiff had satisfied the higher burden of proof, the propriety of that higher burden was not presented.

**8.** One court's research caused it to conclude that Colorado is the only state that has adopted the beyond a reasonable doubt standard for punitive damages. *Fogarty v. Greenwood,* 724 F.Supp. 545, 547 n. 2 (N.D.Ill.1989). *See also* Annotation, *Standard of Proof as to Conduct Underlying Punitive Damage Awards—Modern Status,* 58 A.L.R. 4th § 6, at 878 (1987). *See generally* 1 J. Ghiardi & J. Kircher, *Punitive Damages: Law & Practice* § 9.12 (1985 & 1990 Supp.) (discussing the burdens of proof for punitive damages).

**9.** *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), require a higher burden of proof to deprive individuals of important rights. The majority invokes those cases—inappropriately I believe—to hinder section 1983's vindication of individuals' federal civil rights.

a broad sweep for remedies in section 1983 actions, *see Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988), I would follow the standard of "preponderance of the evidence" adopted by lower federal courts that have considered this issue. *See Bird v. Figel,* 725 F.Supp. 406, 411–12 (N.D.Ind.1989), and cases there cited. Without specifically addressing the burden of proof standard, several federal circuits have approved jury instructions on punitive damages that contained the preponderance burden of proof. *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 205 n. 5, 206 (1st Cir.1987) (instruction was "proper"); *Wren v. Spurlock,* 798 F.2d 1313, 1322 (10th Cir.1986) (instruction "was proper on the facts of this case"); *McKinley v. Trattles,* 732 F.2d 1320, 1326 & n. 2 (7th Cir.1984) (instruction was "accurate and complete"). *See also Abraham v. Pekarski,* 728 F.2d 167, 172 n. 2 (3d Cir.1984) (noting without comment that instruction used preponderance burden for punitive damages); *Savarese v. Agriss,* 883 F.2d 1194, 1202 n. 13 (3d Cir.1989) (instruction containing preponderance burden—remanded on punitive damages issue because the standard of conduct was too elevated); 3 E. Devitt, C. Blackmar & M. Wolff, *Federal Jury Practice & Instructions* § 85.19 (4th ed. 1987) (employs a preponderance burden). Federal trial courts have used the preponderance burden when imposing punitive damages in trials to the court under section 1983. *Taylor v. Canton,* 544 F.Supp. 783, 794 (N.D.Ohio 1982); *Hopkins v. City of Wilmington,* 615 F.Supp. 1455, 1465 (Del.1985).

## IV.

I concur in parts II and IV of the majority opinion. Contrary to the majority's holding in part III, I would hold that the burden of proof for an award of punitive damages in a section 1983 action is a preponderance of the evidence. I would remand the case for a new trial and would direct the trial court to employ that burden of proof.

KIRSHBAUM and MULLARKEY, JJ., join in this concurrence and dissent.

Justice ERICKSON concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. We granted certiorari to determine the burden of proof required to prove punitive damages under the Civil Rights Act, 42 U.S.C. § 1983 (1981). Although I agree with the majority's view that punitive damages must be established by proof beyond a reasonable doubt, I would not reach this issue because the trial judge properly entered a judgment notwithstanding the verdict (J.N.O.V.). The jury was instructed that the plaintiff was required to sustain the burden of proof beyond a reasonable doubt to recover punitive damages, and a verdict was returned for the plaintiff. The trial judge in entering J.N.O.V. employed the proper legal and factual analysis of the issues relating to the claim of constructive discharge. The majority, without analyzing the evidence, concludes that there was a conflict in the evidence on the constructive discharge of Price and affirms the court of appeals in setting the J.N.O.V. aside and ordering a new trial.

In granting certiorari we also undertook review of whether the court of appeals erred by engaging in fact finding that is without support in the record and employed a subjective standard in determining the constructive discharge issue. From my reading of the record, I conclude that the court of appeals not only wrongly looked to a subjective standard, but also used the incorrect standard for constructive discharge. The facts in the record support the action of the trial judge in entering J.N.O.V. and do not support the findings of the court of appeals.

The respondent, Gary D. Price, who was the plaintiff in the trial court, did not prove or even contend that he was subjected to any new conditions of employment or that the conditions already in existence were intolerable. As a matter of law, no reasonable jury could have found that Price was constructively discharged from his employment by Boulder Valley School District R–2. *Wilson v. Board of County*

*Comm'rs of Adams County,* 703 P.2d 1257 (Colo.1985).

Price brought suit against Zeckser and the school district under 42 U.S.C. § 1983, alleging that he had been constructively discharged without a hearing, and had been denied due process of law. The trial court reserved ruling on the defendant's motion for a directed verdict at the close of the plaintiff's case, but after the jury returned a verdict for Price granted J.N.O.V. for Zeckser and school district.[1]

In reviewing an order for J.N.O.V., the court must apply a two-pronged standard. The evidence must be viewed in the light most favorable to the verdict, and every reasonable inference that can be drawn must be made to support the verdict. *Thorpe v. Durango School Dist. No. 9–R,* 200 Colo. 268, 614 P.2d 880 (1980); *Smith v. City of Denver,* 726 P.2d 1125, 1128 (1986). J.N.O.V. may be granted if there is no factual issue properly determinable by the jury. *Alexander v. First National Bank,* 169 Colo. 252, 260, 455 P.2d 861, 865 (1969) (J.N.O.V. upheld because plaintiff failed to provide any proof of damages.).

The court of appeals reversed the trial court's order for J.N.O.V. holding that a "Jury here could reasonably conclude that Zeckser's actions were deliberate and were calculated to deprive Price of his employment without resort to the process to which Price was entitled." *Price v. Boulder Valley School Dist. R2,* 782 P.2d 821, 825 (Colo.App.1989). The court of appeals holding is in error because it does not include all of the elements of the tort of constructive discharge. The majority concludes that the evidence was in conflict and that J.N.O.V. should not have been entered. I disagree.

To prove constructive discharge, an employee must present sufficient evidence to establish deliberate action by the employer that makes or allows an employee's working conditions to become so difficult or

1. In granting J.N.O.V., the trial court made findings and stated the pertinent conclusions of law and reasons and the basis for its action:

Defendants argue that the evidence presented on plaintiff's claim for constructive discharge is insufficient as a matter of law. The elements of a claim for constructive discharge in Colorado are recited in *Wilson v. Bd. of County Com'r's of County of Adams,* 703 P.2d 1257 (Colo.1985). The court held that:

To prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign. The determination of whether the action of an employer amount[sic] to constructive discharge depends upon whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable, *and not upon the subjective view of the individual employee.* 703 P.2d at 1259.

Plaintiff argues that the court should interpret *Wilson* to include a situation in which the employer requires an employee to do no more than any other similarly situated employee and which would not be considered intolerable by any reasonable person without plaintiff's psychological difficulties but *which is intolerable from the point of view of a reasonable person with plaintiff's psychological difficulties.* Plaintiff asks the court to interpret *Wilson's* "same or similar circumstances" requirement to include not only the working conditions themselves, but also plaintiff's psychological mindset.

Plaintiff's theory would require all employers to assume responsibility for the incorrect handling of a myriad of sophisticated emotional and physical conditions of employees without requiring that the employer be given specific information. There is no evidence Dr. Zeckser was told by anyone that persons with Mr. Price's illness should or should not be required to perform their normal duties or that requiring such performance would force the plaintiff to resign. It is irrational to hold employers to a standard which requires knowledge they do not possess.

More importantly, plaintiff's theory would greatly expand the tort of constructive discharge. Although the court in *Wilson* explicitly rejects a subjective standard for working conditions, plaintiff would substitute a standard which shifts from plaintiff to plaintiff not based upon various job circumstances, but based upon various employee characteristics. Under plaintiff's theory requiring an employee with one set of physical and mental characteristics to perform a particular task would not constitute a constructive discharge but requiring a different employee to perform precisely the same task would create a constructive discharge. The court believes *Wilson* rejects the extension of the law of constructive discharge into such a vague and unreviewable area. Plaintiff has cited *no* authority from any jurisdiction which would so extend the law. Under *Wilson,* plaintiff's theory is not sustainable.

intolerable that the employee has no other choice but to resign. *Wilson v. Board of County Comm'rs of Adams County*, 703 P.2d at 1259. "The determination of whether the actions of an employer amount to a constructive discharge depends upon whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable, and not upon the subjective view of the individual employee." *Id.* at ·1259, 60.

The court of appeals decision merely concludes that Zeckser's actions were deliberate. Necessary elements of constructive discharge are ignored. The decision does not address whether Zeckser imposed new working conditions upon Price, and whether these conditions were intolerable. The court of appeals, after finding facts not supported by the record, determined that Price was constructively discharged. The standard of review for a J.N.O.V. requires the appellate court to view the evidence in the light most favorable to the nonmoving party, but it does not allow the appellate court to find facts which cannot be legitimately drawn from the record.

The evidence may be in conflict as to whether Zeckser knew of Price's impaired condition, but no evidence supports a finding that Zeckser deliberately imposed new working conditions that were so intolerable that Price had no choice but to resign. Assuming that a reasonable jury could find that Zeckser knew of Price's impaired con-

dition and that he acted with deliberation, a reasonable jury could not have found that Zeckser imposed new conditions, or that they were intolerable. No evidence appears in the record to support such findings.[2]

The conditions required of Price by Zeckser were duties that every teacher at Casey Junior High School was required to perform. Price's duties were standard administrative tasks that had been required of him since the beginning of the school year, but which he had failed to meet.[3] The evidence does not establish or even indicate that Zeckser imposed new or unique conditions upon Price. The evidence is also insufficient to prove that the conditions imposed on Price and the other school teachers were so difficult or intolerable that, when viewed by a reasonable person under the same circumstances, would have provided no other choice but to resign. *See Wilson*, 703 P.2d at 1259, 1260.

The court of appeals concluded that although it would appear that *Wilson* requires an "exclusively objective analysis, the theory of constructive discharge countenances consideration of factors peculiar to the particular employee and the circumstances of his work to determine the larger question of whether the employee's resignation was voluntary." *Price*, 782 P.2d 821, 824. I reject that conclusion because it improperly interprets *Wilson*'s same or "similar circumstances" require-

---

**2.** On October 19, 1979, Price presented Zeckser with a letter explaining his intent to "actively look for other employment in the period before the semester break, hoping to make a job change at that time." The letter was in partial response to an earlier meeting between Price and Zeckser where Zeckser explained the standard and uniformly imposed duties that Price was not fulfilling. The letter discusses Price's disillusionment with teaching and that changing attitudes and values on his part were the principle causes for his intent not to continue in the teaching profession. The letter did not give any indication that the duties required of Price were intolerable. In fact, the letter stated that Price would take care of the immediate problems over the coming weekend.

**3.** In two separate letters dated October 3, 1979, and October 12, 1979, Zeckser requested that Price:

(a) return the keys, gradebook and file drawer to Platt Junior High, where Price had previously taught;
(b) submit weekly lesson plans (forms were provided by the school);
(c) adhere to the minimum teacher duty day of 7:45 a.m. to 3:15 p.m., and not leave the building or grounds without administrative permission during the duty day;
(d) submit a brief autobiography for inclusion in the school paper;
(e) submit a Personal/Professional Growth Plan;
(f) submit course outlines for Individual Composition and Creative Writing classes;
(g) attend required faculty meetings;
(h) adequately report attendance.

ment to include not only the working conditions of the employee, but also the employee's particular psychological mindset. No support for such an extension of the law can be found in *Wilson* or any other Colorado case. Such an extension of the law would require all employers to assume responsibility for the resolution of the emotional and physical impairment of all employees.

The trial court, in my view, properly found that the jury had reached a verdict that was not supported by sufficient or competent evidence. J.N.O.V. was properly entered by the trial judge.

Accordingly, I concur in part and dissent in part.