**Gary D. PRICE, Plaintiff–Appellant and Cross–Appellee,**

v.

**BOULDER VALLEY SCHOOL DISTRICT R–2, and David Zeckser, Defendants–Appellees and Cross–Appellants.**

No. 86CA0718.

Colorado Court of Appeals, Div. III.

May 25, 1989.

Rehearing Denied June 29, 1989.

Certiorari Granted Nov. 27, 1989.

William P. Bethke, Denver, for plaintiff-appellant and cross-appellee.

Caplan & Earnest, Gerald A. Caplan and Joy Fitzgerald, Boulder, for defendants-appellees and cross-appellants.

Opinion by Judge JONES.

In this appeal, plaintiff, Gary D. Price (Price), asserts the trial court erred (1) by entering judgment notwithstanding the verdict in favor of the defendants on his claim under 42 U.S.C. § 1983 (1986) for deprivation of due process, (2) in denying his motion to modify the jury award, (3) in instructing the jury as to the standard of proof for an award of punitive damages, and (4) in dismissing his claim for rescission of a letter of resignation which he had signed. Defendants, Boulder Valley School District (district) and David Zeckser (Zeckser), cross-appeal certain findings and conclusions concerning Price's § 1983 claim. We affirm in part, reverse in part, and remand for further proceedings.

Price was a tenured teacher in the district from 1967 until he signed a letter of resignation in the fall of 1979. During most of that time, his performance was satisfactory, even exemplary. Zeckser was Price's principal at the time of his resignation, and was aware of Price's previous blameless record.

In 1975, Price was diagnosed as manic-depressive. He suffered an emotional breakdown in the summer of 1979, having undergone, in 1978, the death by cancer of his former wife, and his assumption of the custody of their two minor children.

Beginning in the 1978–79 school year and continuing into the 1979–80 school year, Price began seriously to neglect certain job duties. Specifically, he failed to take attendance and post absence lists, failed to prepare required lesson plans and course outlines, failed to prepare and record student grades, and failed to return a grade book and the keys to the school at which he had taught in 1978–79. Zeckser received several complaints from both parents and students regarding Price. Repeated oral and written directives by Zeckser did not result in correction of the deficiencies in Price's performance.

During a 45–minute meeting between Price and Zeckser in October 1979, Price discussed his personal and psychological problems with Zeckser. Although there is dispute as to the degree to which Price provided details of these matters to Zeckser, the record reflects that Price informed Zeckser that he had sought professional help, and was seeking an analyst, that he was taking tranquilizers, that he was exhausted and barely able to function, and that he frequently had crying spells. It is uncertain whether Price mentioned that he had been diagnosed as manic-depressive. Following the meeting, Zeckser expressed, orally and in writing, certain instructions and directions which he expected Price to follow under pain of serious disciplinary consequences.

Approximately one week after the conference, Zeckser prepared a letter of resignation in Price's name. Zeckser presented the same, or a copy thereof, to Price on several occasions, until Price finally signed the letter. The district officially accepted Price's resignation on November 8, 1979, and notified Price of the same by a letter dated November 15, 1979. Price testified that his resignation was not voluntary because at the time he had no real alternative but to sign the letter.

Upon trial, the jury returned a verdict in favor of Price and against the district in the amount of $60,000 for compensatory damages. The jury also found against Zeckser as to liability, but assessed no damages against him. The jury awarded no punitive damages. The trial court denied Price's motion to modify the jury's award so as to impose liability jointly and severally upon the district and Zeckser. However, concluding that there was insufficient evidence of deliberate action on the part of Zeckser to support any liability under § 1983, the court granted the defendants' joint motion for judgment notwithstanding the verdict.

### I.

Plaintiff contends that the trial court erred in granting the defendants' motion for judgment notwithstanding the verdict. He argues that the evidence would support a finding by the jury that he was constructively discharged without being afforded the procedure specified in the Teacher Employment, Dismissal, and Tenure Act, § 22–63–101, et seq., C.R.S. (1988 Repl.Vol. 9) (Tenure Act). The court's ruling was premised on its conclusion that by voluntarily signing the letter of resignation, plaintiff had abrogated any necessity to follow that statute. We agree with plaintiff.

■ For a constructive discharge to be demonstrated, there must be a showing that there was deliberate action on the part of the employer which made the employee's working conditions, or allowed them to become, so difficult or intolerable that the employee had no other choice but to resign. *Wilson v. Board of County Commissioners,* 703 P.2d 1257 (Colo.1985); *see also Irving v. Dubuque Packing Co.,* 689 F.2d 170 (10th Cir.1982).

■ Whether an employer's actions amount to constructive discharge must be tested not upon the subjective view of the individual employee but against whether a reasonable person under similar circumstances would view the working conditions as intolerable. *Wilson v. Board of County Commissioners, supra.*

■ Although analysis of constructive discharge does not turn upon the subjective view of the individual employee, consideration of the condition of the particular employee may be appropriate to determine the existence of deliberate employer actions. *See Meyer v. Brown & Root Construction Co.,* 661 F.2d 369 (5th Cir.1981) (pregnancy of female employee considered in light of increased physical demands of job). Moreover, the central concept in the definition of constructive discharge is involuntariness on the part of the employee in resigning. *See Knee v. School District No. 139,* 106 Idaho 152, 676 P.2d 727 (1984). Thus, while it would appear that *Wilson v. Board of County Commissioners, supra,* requires an exclusively objective analysis, we conclude that the theory of constructive discharge countenances consideration of factors peculiar to the particular employee and the circumstances of his work to determine the larger question of whether the employee's resignation was voluntary.

We note that psychiatric or psychological impairments and the effects thereof are not as readily apparent to the unlearned employer as are physical limitations. However, we find no rationale for distinguishing, as a matter of law, between categories of impairment. The essential question is whether the employer's awareness of the employee's condition was sufficient to enable the trier of fact to conclude that the employer's actions were of a deliberate character.

■ We conclude, in this connection, that the employer need not comprehend the precise depths of the employee's impairments or the precise effects thereof on the employee's capacity to perform specific tasks. It is sufficient that the employer possess notice, or information reasonably calculated to provide notice, that the employee suffers from impairments which adversely affect the employee's ability to perform.

Here, the record reflects that Price suffered from an increasingly severe manic-depressive disorder with obvious associated dysfunctioning as to his work. The record also reflects that Price provided Zeckser considerable information as to his psycho-

logical impairments, and that Zeckser was aware of these difficulties and of their impact on Price's abilities to carry out his job.

■ While it is undisputed that Zeckser initially demanded no more of Price than the standard requirements of his job, he did so in conjunction with the threat of serious disciplinary procedures, and under circumstances which more reasonably indicated the need for offers of treatment and assistance. Moreover, with knowledge that Price was in a weakened mental condition, Zeckser took it upon himself to draft a letter of resignation which he presented to Price on several occasions until Price finally signed the letter. This fact alone, particularly when considered in light of Price's weakened mental state, militates against the voluntariness of Price's resignation, and in favor of the imposition of intolerable working conditions.

■ Judgment notwithstanding the verdict may be entered only if reasonable persons viewing the evidence in the light most favorable to the party against whom the motion is directed, could not reach the same conclusion as the jury. *Smith v. City & County of Denver,* 726 P.2d 1125 (Colo.1986). In our view, the jury here could reasonably conclude that Zeckser's actions were deliberate and were calculated to deprive Price of his employment without resort to the process to which Price was entitled. We, therefore, conclude that the trial court erred in granting judgment notwithstanding the verdict on the § 1983 claim.

## II.

In their cross-appeal, defendants contend that, in any event, Price could not prevail on his § 1983 claim because he was afforded an adequate remedy under state law for any injury caused by the termination of his employment. The trial court found to the contrary, and defendants assert that that was error. However, we conclude that, under proper constitutional analysis, it is unnecessary to consider the question of the availability of any such state remedy.

■ A longstanding and essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing. *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Although the United States Supreme Court has recognized exceptions to the requirement of pre-deprivation process, its decisions suggest that, absent the necessity of quick action by the state or the impracticability of providing pre-deprivation process, a post-deprivation hearing is constitutionally inadequate. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

■ In one of many such decisions, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the court held that post-deprivation redress, if available, may satisfy due process requirements when the deprivation stems from random unauthorized action, as opposed to some established state procedure. In the case of random unauthorized actions, the court reasoned, the governmental entity cannot anticipate the deprivation and, therefore, cannot practicably provide predeprivation process. *See also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, such post-deprivation process is constitutionally adequate only in instances of random and unauthorized acts by a governmental employee, and does not apply if the deprivation arises by virtue of established or authorized procedure. *Logan v. Zimmerman Brush Co., supra.*

■ The trial court's finding that Zeckser's acts were authorized by the district is supported by the evidence and will not be disturbed on review. *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo. 1986). Further, we conclude as a matter of law that the district may, and under the facts of this case did, delegate to Zeckser the authority to evaluate and terminate Price pursuant to established policy. *See Fremont RE–1 School District v. Jacobs,*

737 P.2d 816 (Colo.1987); § 22–32–109 and § 22–32–110, C.R.S. (1988 Repl.Vol. 9).

As Zeckser's actions in terminating Price were authorized by the district, the district may not claim that it was not in a position to anticipate and control those actions. The district was in a position to forecast that such deprivations as alleged by Price would occur if it failed to insure that the termination process provided by the Tenure Act was followed. *See* § 22–63–117, C.R.S. (1988 Repl.Vol. 9); *Parratt v. Taylor, supra; Hudson v. Palmer, supra.* Therefore, irrespective of what post-deprivation remedies were available to plaintiff, they would not bar his claim under § 1983.

### III.

Defendants also contend that the alleged deprivation of a property right suffered by plaintiff did not result from a policy or custom of the district so as to subject the district to liability under § 1983. We disagree.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that governmental liability is limited to acts which the governmental entity has officially sanctioned or ordered, and that liability is appropriate if the execution of such policy is carried out by one who represents official policy. "[T]he *Parratt* due process issue overlaps with the *Monell* requirement that municipal liability be based on the enforcement of municipal policy." M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses and Fees* § 3.8 (1986). *See City of Canton, Ohio v. Harris,* — U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

As we conclude that sufficient evidence exists in the record to find governmental liability, the trial court's conclusions in this regard will not be disturbed on review. *Martinez v. Continental Enterprises, supra.*

The defendants' reliance on *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) is misplaced. *Pembaur* was concerned with the issue whether an action by a municipal policymaker on a single occasion would satisfy the *Monell* requirement, and there, the Court held that such official must be responsible for establishing final policy with respect to the subject matter in question. Here, the record reflects that the action taken by Zeckser is matter of custom, rather than a single action as was involved in *Pembaur.* Thus, the rule announced in that case is inapplicable here. Therefore, Price's § 1983 claim may lie against the district as well as against Zeckser.

### IV.

Price next contends that the trial court's instruction to the jury as to the standard of proof for an award of punitive damages under 42 U.S.C. § 1983 was erroneous. We agree.

The court instructed the jury that it must find the existence of punishable actions on the part of Zeckser beyond a reasonable doubt. While this is the proper standard of proof for punitive damages under Colorado law, it is not applicable to a claim for punitive damages under 42 U.S.C. § 1983.

In the federal courts, § 1983 claims for punitive damages require that the jury find the requisite elements only by a preponderance of the evidence. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *McKinley v. Trattles,* 732 F.2d 1320 (7th Cir.1984); 3 E. Devitt & C. Blackmar, *Federal Jury Practice & Instructions* § 85.19 (1977).

Use of state law is authorized only when federal law cannot effectuate the purposes of the civil rights statutes. 42 U.S.C. § 1988. Thus, federal standards govern the determination of damages under the statutes, and such awards should not be limited by the application of state law. *Gordon v. Norman,* 788 F.2d 1194 (6th Cir.1986). We conclude, therefore, that the trial court erred in instructing the jury that it must find proof beyond a reasonable doubt, rather than by a preponderance of the evidence.

## V.

Price further contends that the jury verdict should be modified to reflect that the defendants are jointly and severally liable. We agree.

 In claims arising under § 1983, joint and several liability should be imposed upon multiple defendants for injuries which are indivisible or which result from joint or conspiratorial conduct. *See Watts v. Laurent,* 774 F.2d 168 (7th Cir.1985). *See also Thompson v. City of Portland,* 620 F.Supp. 482 (D.Me.1985).

Here, the jury committed prejudicial error in attempting to apportion or allocate liability for Price's damage. We conclude that the trial court must correct this technical error by entering judgment against both defendants jointly and severally. *See Morgan v. Gore,* 96 Colo. 508, 44 P.2d 918 (1935); *Weeks v. Churchill,* 44 Colo.App. 520, 615 P.2d 74 (1980).

However, in order to avoid confusion, we stress that the foregoing applies only to the award of compensatory damages. A governmental entity is immune from punitive damages under § 1983 for the acts of its officials. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Thus, on remand, any award of punitive damages may be assessed only against Zeckser.

## VI.

We have considered defendants' other contentions and find them without merit.

In view of the foregoing disposition, we need not consider Price's contention regarding his claim for rescission of the letter of resignation.

The judgment notwithstanding the verdict is reversed, and the cause is remanded with instructions to reinstate the jury's verdict and to award appropriate interest thereon, to modify the judgment to reflect joint and several liability between defendants, and to conduct a new trial as to punitive damages only. The judgment is affirmed in all other respects.

TURSI and CRISWELL, JJ., concur.