**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEBRA L. JACKSON,

      Plaintiff-Appellant,

v.

DILLARD'S DEPARTMENT
STORES, INC.,

      Defendant-Appellee.

No. 02-1056
(Colorado)
(D.Ct. No. 00-B-604)

---

**ORDER AND JUDGMENT**

---

Before **KELLY** and **O'BRIEN**, Circuit Judges and **EAGAN**, District Judge[*].

---

      Debra L. Jackson appeals the district court's award of summary judgment

to Dillard's Department Stores, Inc. (Dillard's) on her claims of sexual

discrimination, hostile work environment and retaliation under Title VII of the

Civil Rights Act of 1964 and her supplemental Colorado state law claims.[1]

---

      [*]The Honorable Claire V. Eagan, United States District Judge for the
Northern District of Oklahoma, sitting by designation.

      [1]Ms. Jackson also appeals the district court's order denying her motion to
reconsider its order of summary judgment under Fed. R. Civ. P. 59(e), its order
denying her motion to continue under Fed. R. Civ. P. 56(f), and its order awarding
attorneys fees to Dillard's. Her arguments on these issues are without merit.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

*Facts*

Ms. Jackson was employed by Dillard's in its Park Meadows Mall store in Littleton, Colorado between September 1998 and February 2000. From September 1998 until June 1999, she worked as a salesperson in the women's shoes department. During this period, she claims to have been sexually harassed on repeated occasions, both verbally and physically, by two of her co-workers, Raul Rivadeneyra and Olig Rozenberg. She contends she complained to her superiors about the harassment, to no avail.

According to Ms. Jackson, on November 15, 1998, Mr. Rivadeneyra came up behind her and deliberately tripped her, causing her to fall. As a result of the fall, she injured her back and neck. She immediately reported the injury to Dillard's for worker's compensation and visited a doctor who approved her return to work with physical restrictions. On November 19, Ms. Jackson returned to work. She complains her superiors did not honor the restrictions imposed by her doctor. To the contrary, Dillard's offered evidence it tailored Ms. Jackson's job responsibilities to meet the physical restrictions recommended by her doctor. Ms. Jackson admits to a number of absences between November 1998 and July 1999, which she attributes to her injury and anxiety engendered by the sexual harassment she faced.

On March 31, 1999, her doctor released Ms. Jackson to return to work full-time with a simple restriction that overhead activities be limited to five minutes per hour. In July 1999, Dillard's transferred Ms. Jackson to the men's pants department. According to Dillard's, this transfer was intended to both meet the work restrictions recommended by her doctor and assuage Ms. Jackson's expressed disaffection with the women's shoes department.

On July 20, 1999, Ms. Jackson took a leave of absence from Dillard's for treatment of her work-related injury, including eventual cervical spine surgery on October 10, 1999. Dillard's leave policy allowed an employee to take six months leave without explanation. However, according to the policy, an employee who did not report to work after the six months would be terminated.[2] Ms. Jackson did not return to work after six months and was terminated under the leave policy on February 2, 2000. During her leave of absence, she was not employed elsewhere; nor did she seek other employment. After her surgery, Ms. Jackson's doctor had requested a functional capacity evaluation. The evaluation was conducted May 3, 2000. It set her work tolerance at "4 hours in the sedentary/light work category." (Appellant App., Vol. II, p. 377).

---

[2]Ms. Jackson argues she was not informed of a change in the leave policy, effective September 1, 1999, to provide for mandatory rather than optional termination when an employee used up all of his/her leave. This argument is moot in light of our decision in the case.

During her deposition on September 21, 2000, Ms. Jackson claimed she had been medically unable to work at any job, including one involving only light duties, since her November 15, 1998, injury. She stated she had completely withdrawn from the job market. She also testified she had tried to continue working at Dillard's after the accident, but was medically unable to do so, and that she became totally unable to work when she began her leave of absence from Dillard's in July 1999. In a second deposition on July 24, 2001, she qualified her earlier deposition testimony by attributing her inability to work to the unavailability of a job at Dillard's meeting her medical needs. In her November 13, 2001 response to Dillard's motion for summary judgment, Ms. Jackson submitted an affidavit in which she stated that although she remained out of the job market, she was able to return to work so long as it involved only light duties, as per her doctor-recommended physical restrictions.

### *District Court Proceedings*

Ms. Jackson filed Title VII claims against Dillard's for sexual discrimination, hostile work environment and retaliation, under 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), seeking equitable relief in the form of lost wages and benefits under 42 U.S.C. § 2000e-5(g). She also filed state law claims for wrongful and constructive discharge, seeking compensatory and exemplary damages.

The district court awarded summary judgment in favor of Dillard's on all of Ms. Jackson's Title VII claims, reasoning that because she was not "ready, willing and able" to work, equitable relief under Title VII was unavailable to her as a matter of law. In the alternative, the district court concluded there was no genuine issue of material fact with respect to any of her individual Title VII claims. The court also awarded summary judgment to Dillard's on Ms. Jackson's state law claims on the grounds they did not present genuine issues of material fact and Dillard's was entitled to judgment as a matter of law.

***Standard of Review***

We review de novo a district court's award of summary judgment. *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1212 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying the standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999), *cert. denied,* 528 U.S. 815 (1999).

***Title VII Claims***

In concluding Ms. Jackson did not make out a claim for equitable relief because she was not "ready, willing and able" to return to work,[3] the district court accepted her September 21, 2000 deposition testimony and disregarded her November 13, 2001 affidavit, characterizing it as an attempt to create a sham issue of fact. Ms. Jackson challenges this ruling. "We review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion." *Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1016 (10th Cir. 2002). But "we will not disturb the district court's decision unless [we have] a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (internal quotation and citation omitted).

"[I]n determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986). However, "[i]n assessing a conflict under these circumstances . . . courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Id.* We have cautioned, "the utility of summary judgment as a procedure

---

[3]Ms. Jackson does not dispute her claim for equitable relief (lost wages and benefits) would fail if she was not "ready, willing and able" to return to work. *See Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 267-68 (10th Cir. 1975).

for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." *Id*. (internal citation omitted). We have suggested factors to consider in evaluating whether a party is attempting to create a sham fact:

> Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

*Id.* We now proceed to apply the *Franks* test.

The first relevant factor under *Franks* is whether or not the affiant was cross-examined during earlier testimony. In her September 21, 2000 deposition, Ms. Jackson was represented by counsel. She unequivocally testified she had been medically unable to work at any job, even one involving only light duties, since November 15, 1998, and had completely withdrawn from the job market. She explained she had tried to continue working at Dillard's after the accident, but was unable to do so. She then declared July 20, 1999, when she began her leave of absence from Dillard's, to be the date when she became totally unable to work. Whether Ms. Jackson's declared inability to work at any job began November 15, 1998, or July 20, 1999, does not alter her sworn testimony that at the time of her termination, her condition was such that she remained unable to work at any occupation, even one involving only light duties. Ms. Jackson gave

this testimony even though she had in hand the results of the functional capacity evaluation conducted May 3, 2000, which cleared her to work four hours a day in the light/sedentary work category. Ms. Jackson's counsel neither objected to the line of questioning leading to her statements, nor cross-examined Ms. Jackson in order to clear up any misimpression they may have left.

In her second deposition, taken on July 24, 2001, Ms. Jackson testified she had reviewed the transcript of her earlier deposition in order to correct any errors. No corrections appear in the record. Nor did she alter her unequivocal statements of September 21, 2000, other than to attribute her inability to work to the unavailability of a job at Dillard's that met her perceived medical needs.

We now turn to the second relevant factor in the *Franks* test. In her affidavit of November 13, 2001, filed after Dillard's filed its Motion for Summary Judgment, Ms. Jackson disavowed her September 21, 2000 deposition testimony insofar as it might be characterized as a declaration that she was unable to work at any job, even one including only light duties. While acknowledging she remained entirely out of the job market, she claimed in her affidavit to have always been "ready, willing and able" to perform work encompassing light duties at Dillard's, such as behind the counter in men's fragrances or in cosmetics. In her affidavit, Ms. Jackson does not claim she was without access to pertinent evidence at the time of her earlier testimony, including the results of the functional capacity

evaluation. Nor does she point to any newly discovered evidence to justify her apparent departure from her earlier testimony.

Turning to the last relevant factor in the *Franks* test, Ms. Jackson does not argue her first deposition reflected confusion which she only tried to explain in her subsequent affidavit. Instead, she contends her affidavit is really not at odds with her earlier deposition testimony. We conclude otherwise. She points to the portion of her July 24, 2001 deposition in which she attributed her inability to work at any job, stated in her first deposition, to the unavailability of a job at Dillard's which met her medical needs. We give no weight to this qualification in her second deposition because the record suggests Ms. Jackson consistently chose to determine for herself what kind of a job met her medical needs. For example, she acknowledged that on March 31, 1999, her doctor permitted her to return to work at Dillard's full-time, with a simple restriction that overhead activities be limited to five minutes per hour. Instead of working under this restriction, Ms. Jackson chose to second-guess the doctor's recommendation: "I think some of the stuff he thought maybe I could do, maybe I couldn't." (R., Appellant App., Vol. II, p. 545). Her predilection to self-diagnose was further demonstrated in her first deposition when she proclaimed herself unable to work at any job, even one involving only light duties, in the face of a functional capacity analysis requested by her own doctor that cleared her for limited sedentary/light duty. It appears

Ms. Jackson elected not to return to work unless it was in a department and under conditions of her own choosing, despite Dillard's demonstrated efforts to accommodate her doctor-recommended medical restrictions.[4]  Because Ms. Jackson does not enjoy the personal prerogative to define the conditions of her employment, we put aside the qualification expressed in her second deposition. Without it, Ms. Jackson's affidavit is clearly contrary to her September 21, 2000 deposition testimony.  Although she does not claim it was executed to clear up confusion, there was in any event no confusion to clear up.  Her declarations of September 21, 2000, were unambiguous.

Having applied the relevant factors of the *Franks* test, we conclude the district court did not abuse its discretion in finding Ms. Jackson's November 13, 2001 affidavit was an attempt to create a sham issue of fact in order to survive summary judgment.  Relying only on her earlier deposition testimony, the district court correctly found Ms. Jackson was not "ready, willing and able" to return to work.  Thus, the equitable relief she sought on her Title VII claims (lost wages and benefits) was not available to her as a matter of law.  *See Taylor*, at 267. Because we agree with the district court that Ms. Jackson's federal claims fail for lack of a remedy, we need not reach the district court's alternate disposition

---

[4]The record suggests Ms. Jackson's inability to return to work on her own terms was complicated by psychological distress she suffered as a result of her November 15, 1998 injury, for which she was also treated.

awarding Dillard's summary judgment on Ms. Jackson's individual Title VII claims.

### State Law Claims

Ms. Jackson argues she was discharged by Dillard's because she exercised her right to claim workers' compensation for her November 15, 1998 injury.[5] She contends this is actionable under Colorado's public policy exception to the at-will employment doctrine. *See Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 108 (Colo. 1992). "[W]e know of no reason why the public-policy exception should not apply to the discharge of an employee . . . because of the employee's exercise of a statutory right or privilege granted to workers." *Id.* at 109 (internal citations omitted). *Lorenz* cites with approval to *Lathrop v. Entenmann's Inc.,* 770 P.2d 1367 (Colo. Ct. App. 1989), *cert. granted*, 778 P.2d 1370 (Colo. 1989)(recognizing a claim for wrongful discharge based on an employee filing for workers' compensation).

Ms. Jackson's claim can only withstand summary judgment if she is able to present evidence that her termination was causally connected to her filing for

---

[5]In the alternative, Ms. Jackson argues she was constructively discharged. This argument is without merit. Constructive discharge is premised upon the equivalence between a resignation induced by intolerable conditions and an outright termination. *See Wilson v. Board of County Comm'rs of County of Adams,* 703 P.2d 1257, 1259 (Colo. 1985). Ms. Jackson did not resign; she was terminated.

benefits under workers' compensation. *See Id.* at 1372-73. Dillard's maintains it terminated Ms. Jackson under its evenly-applied leave policy, and its actions were not pretextual. While Dillard's presented evidence substantiating its position, Ms. Jackson was unable to present any evidence her termination was due to her application for workers' compensation benefits.[6] The fact she did not return to work because of the lasting effects of her work-related injury does not establish the necessary causal connection. We believe the reasoning expressed in *Lankford v. True Ranches, Inc.* would be persuasive to the Colorado courts: "[t]here is a distinction between a termination for the exercise by the worker of his rights under the worker's compensation law and a termination for inability to do the work, even if such inability is caused by an accident requiring the exercise of worker's compensation rights." 822 P.2d 868, 872 (Wyo. 1992). We conclude the district court correctly determined there was no genuine issue of material fact presented in Ms. Jackson's state law claims, and it correctly awarded summary

---

[6]Nearly fifteen months elapsed between the time Ms. Jackson reported her injury to workers' compensation and the time she was discharged. This span of time is insufficient to support an inference of a causation. *See also, Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (finding a three month period between protected activity and adverse employment action, standing alone, insufficient to establish causation).

-12-

judgment to Dillard's.[7]

## *Conclusion*

For the reasons given, we AFFIRM the orders of the district court.

**Entered by the Court:**

**TERRENCE L. O'BRIEN**
United States Circuit Judge

---

[7]Ms. Jackson in her brief takes issue with the district court's denial of her claim for exemplary damages. We agree this claim was mooted by the failure of her state law claims for actual damages. *See Defeyter v. Riley,* 671 P.2d 995, 998 (Colo. Ct. App. 1983).