The evidence at trial was that Plaintiffs Walker and Wascher conflated resignation and termination, believing ultimately that the company simply intended to terminate them. Other employees testified consistent with this state of affairs. Particularly revealing was the testimony (upon cross examination by defense counsel) of Kelly Harris, a Vectrus employee who had been assigned first to Bagram and who then spent several years at Forward Operating Base Shank:
Q. In July 2014 your employment came to an end; right?
A. That's correct.
Q. And it came to an end because Fluor issued a descope; is that right?
A. Partially.
Q. Okay. You weren't fired, right, in other words, for misconduct or anything like that?
A. No, sir.
Q. And you didn't quit; right?
A. Actually, I did.
Q. Oh, you did?
A. I had put in notice, and I think two to three days later we were called in and descoped.
Q. Okay. So did you take the descope separation?
A. I did.
*974 Q. Rather than the quit separation?
A. Yeah, I did.
Trial Tr. (May 31, 2018) at 21:1-17.[1]
After considering the evidence in its totality, the jury found that Plaintiffs resigned, entering special verdicts concluding that: (1) both men "proved by a preponderance of the evidence that [their] separation from Vectrus constituted a resignation from employment," Jury Verdict Forms, ECF No. 312 at 11 (Wascher), 15 (Walker); and (2) both men faced working conditions that "were so difficult or intolerable that [they] had no reasonable choice but to resign," id. at 11 (Wascher), 15 (Walker).
I will not disturb those findings. In addition to the separation letters quoted above, there was ample evidence at trial of Plaintiffs' working conditions and the unique events surrounding their separation from Defendant, which is both summarized (albeit from Plaintiffs' perspective) and cited in Plaintiffs' Response Brief. See Corrected Resp. 4-7, 9-10, ECF No. 380. For purposes of this motion, that evidence must be construed in Plaintiffs' favor. Tyler v. RE/MAX Mountain States, Inc. , 232 F.3d 808, 812 (10th Cir. 2000). I cannot say that "the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position," as is required for judgment as a matter of law. Id. (quoting Finley v. United States , 82 F.3d 966, 968 (10th Cir. 1996) ); see also Shaw v. AAA Eng'g. & Drafting, Inc. , 213 F.3d 519, 529 (10th Cir. 2000) ("Judgment as a matter of law is improper unless the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion.").
II. Analyzing the Voluntariness of an Employee's Separation Furthers Public Policy Better Than Requiring Strict Adherence to the Pleading of a Wrongful Termination or Constructive Discharge Claim.
Although not dispositive of the present motion, I write further to explain an alternative basis for upholding the jury's verdict. As noted above, Defendant asserts that because Plaintiffs testified they were terminated, they failed to establish a wrongful termination claim through a constructive discharge theory. Although the state of Colorado law on this issue is not entirely clear, the outcome most consistent with the policy behind a wrongful termination claim is that a wrongful separation from employment permits recovery, regardless of whether an employee pleads a wrongful termination or constructive discharge.
My research shows that the first Colorado case to adopt the concept of "constructive discharge" for employment cases was Colorado Civil Rights Commission v. State By & Through School District No. 1, Bent County , 30 Colo.App. 10, 488 P.2d 83 (1971). The court adopted the theory from unfair labor practice cases. Id. at 86. It steered clear of a mechanical approach: "The fact of discharge does not depend upon the use of formal words of firing. The test is whether sufficient words or actions by the employer 'would logically lead a prudent person to believe his tenure had been terminated.' " Id. (quoting NLRB v. Trumbull Asphalt Co. , 327 F.2d 841, 843 (8th Cir. 1964) ). Thus, "[a] mere signed statement that a resignation is voluntary... does not relieve an employer of the consequences of an act amounting to constructive discharge." Id. It is obvious *975 from this case that the judicial doctrine of constructive discharge was intended to apply in situations in which the employee claims that his or her separation from employment was wrongful, but there is evidence that the employee was not terminated by the employer and instead resigned. In such a circumstance, the fact of "voluntary" resignation does not necessarily bar the claim for wrongful discharge. An employee can recover for being "constructively discharged" upon a proper factual showing.
Subsequent Colorado cases do not draw a clear line of demarcation between a constructive discharge and a termination. In Hoffsetz v. Jefferson County School District No. R-1 , 757 P.2d 155 (Colo. App. 1988), the court noted that the plaintiff employee's separation from employment "was processed as a 'quit' by the [defendant] school district," yet the employee filed a grievance alleging he was terminated. Id. at 157. Without any additional discussion of the facts, the court of appeals affirmed the lower court's judgment in the plaintiff's favor for constructive discharge, after noting that the jury was properly instructed on the law of constructive discharge and ample evidence supported the jury's finding in the plaintiff's favor. Id. at 158.
In Lathrop v. Entenmann's, Inc. , 770 P.2d 1367 (Colo. App. 1989), the facts as stated by the court of appeals were that the plaintiff requested to return to work after an injury, but the employer refused, at which time the plaintiff believed he had been "constructively discharged." The court went on to discuss the viability of the plaintiff's claim for constructive discharge, even though the facts showed no evidence of a resignation. Id. at 1370.
Yet another instructive case is Price v. Boulder Valley School District R-2 , 782 P.2d 821 (Colo. App. 1989), aff'd in part, rev'd in part , 805 P.2d 1085 (Colo. 1991). The employer in Price repeatedly presented the employee with a letter of resignation until the employee finally signed it. The court found that "[t]his fact alone... militates against the voluntariness of [the employee's] resignation." Id. at 825. Critical to the court's analysis was the fact that the separation was not voluntary, whether it was termed a resignation or termination. Id. at 824-25. In other words, the inquiry does not turn on the ultimate mechanical act of whether the employer or the employee makes the final move. The essential question is one of voluntariness.
This focus on voluntariness is consistent with the guidance proffered in Romero I, discussed above:
[T]he operative inquiry related to discharge is not limited to an examination of the particular words used in any exchange between an employee and his or her supervisor or employer, but whether the employee left his or her position voluntarily or involuntarily. In this instance, the operative inquiry is whether the evidence demonstrates that [the employee] left his employment involuntarily, either because [the employer] actually fired him or because [the employer] constructively discharged him by making his working conditions so intolerable following the exercise of [his rights] that he had no choice but to leave his employment.
2017 WL 3608194, at *4 (examining constructive discharge in the context of a claim for wrongful discharge in violation of public policy). In addition, Romero I states that the Tenth Circuit "has recognized that constructive discharge is simply one form of wrongful discharge." Id. (citing Chapman v. Carmike Cinemas , 307 F. App'x 164, 174 (10th Cir. 2009) (unpublished) ).
*976 A subsequent order in the same case also bolsters my reasoning. See Romero v. Helmerich & Payne Int'l Drilling Co. , No. 15-cv-00720-NYW, 2017 WL 5900361 (D. Colo. Nov. 30, 2017) ( Romero II ). In Romero II , the jury indicated on the verdict form that the employee was both actually discharged and constructively discharged. Id. at *8-9. The defendant moved for a new trial, in part on the ground that these two findings are irreconcilably inconsistent. See id. at *10 ("The crux of Defendant's argument is that because the jury applied two mutually exclusive legal theories in finding for Plaintiff on an element if his claim, the jury must have been confused overall in its findings of fact and application of law."). Noting the court's obligation to reconcile inconsistent verdicts if possible, see Jarvis v. Commercial Union Assurance Cos. , 823 F.2d 392, 395 (10th Cir. 1987), the court rejected the defendant's argument. It found "that reconciliation is possible and even intuitive" because the findings "are logically consistent in their reflection of the jury's determination that [the employee] did not leave his employment voluntarily." 2017 WL 5900361, at *10-11. The court discounted any confusion as being the likely "result of differing opinions on how to classify the involuntary termination pursuant to a specific legal theory." Id. at *11.
Conflicting with these cases are brief statements from courts in the Tenth Circuit that appear to suggest an employee who is terminated cannot maintain a constructive discharge claim. For example, in Jackson v. Dillard's Department Stores, Inc. , 92 F. App'x 583, 588 n.5 (10th Cir. 2003) (unpublished), the Tenth Circuit analyzed in a footnote whether the plaintiff stated an alternative claim for constructive discharge under Colorado law. The court stated only, "[The plaintiff] argues she was constructively discharged. This argument is without merit.... [The plaintiff] did not resign; she was terminated." Id. Similarly, in Duran v. Flagstar Corp. , 17 F.Supp.2d 1195, 1202-03 (D. Colo. 1998), the Honorable Lewis T. Babcock found that an employee did not state a constructive discharge claim, in part because she "did not resign her employment, but instead was terminated for tardiness and absenteeism." Neither of these cases contain any further analysis or cite to any binding authority, however. And my review of Colorado law does not draw such a mechanical boundary between wrongful termination and constructive discharge claims. Regardless of the terminology used by the employee to describe the separation, it is clear to me that Colorado courts intended to create a cause of action for an employee who involuntarily separates from employment for reasons that violate public policy.
The principle that the involuntariness of the plaintiff's departure from employment is essential to a wrongful discharge claim is supported by Green v. Brennan , --- U.S. ----, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016). There, the Supreme Court analyzed when a wrongful discharge claim becomes a "complete and present" cause of action for claim accrual purposes. Within that analysis, the Court equated constructive discharge with actual discharge, terming them "no different" and noting their common elements:
[O]nly after [an employee] has a complete and present cause of action does a limitations period ordinarily begin to run. Cf. Mac's Shell Serv., Inc. v. Shell Oil Prods. Co., 559 U.S. 175, 189-190, 130 S.Ct. 1251, 176 L.Ed.2d 36 (2010) (the limitations period for a constructive termination of a franchise agreement starts running when the agreement is constructively terminated). In this respect, a claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee. An ordinary wrongful discharge claim also has *977 two basic elements: discrimination and discharge. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ; 1 B. Lindemann, P. Grossman, & C. Weirich, Employment Discrimination Law 21-33 (5th ed. 2012) (Lindemann) ("The sine qua non of a discharge case is, of course, a discharge[.]").
Id. at 1777.
In the present case, Plaintiffs engaged in an effort to meet a higher burden-a constructive discharge-when all they needed to establish was a discharge, which in fact occurred here. "Constructive discharge" is not a separate stand-alone claim, but a legal fiction created by courts to permit an employee who resigned to try to prove the separation from the employer was actually a discharge. Campos v. ManTech Int'l Corp. , No. 14-CV-03088-MSK-MEH, 2016 WL 9710020, at *2 n.4 (D. Colo. Aug. 2, 2016) ("The Court notes that there is no separate 'claim' for constructive discharge recognized under federal law.... If the elements of constructive discharge are met, the Court indulges in the legal fiction that the employee's voluntary resignation was, in actuality, involuntary termination of the employee's employment by the employer-hence an adverse action."), recons. denied , 2017 WL 4226226 (D. Colo. Apr. 20, 2017).
III. Judicial Estoppel Does Not Bar Plaintiff Wascher's Claim.
Finally, Defendant argues that Plaintiff Wascher "is judicially estopped from contending that he did not resign, since he represented to the unemployment bureau that his employment ended because his position was eliminated, not because he 'resigned.' " Mot. 2. Defendant pinpoints the following earlier statement by Wascher: "[D]ue to reduction in force for the U.S. military in Afhanistan the DOD contractor force was also reduced and numerous positions were phased out. My position was one of those, and I was sent home." Id. at 9.
"The doctrine of judicial estoppel is designed 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " BancInsure, Inc. v. FDIC , 796 F.3d 1226, 1239-40 (10th Cir. 2015) (quoting New Hampshire v. Maine , 532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ). Three factors are relevant to a judicial estoppel analysis:
First, courts ask whether a party's later position is "clearly inconsistent" with its former position. Second, courts ask whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." And third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."
Id. at 1240 (quoting New Hampshire v. Maine , 532 U.S. at 750-51, 121 S.Ct. 1808 ).
The Tenth Circuit applies the judicial estoppel doctrine "both narrowly and cautiously." Id. (quoting Hansen v. Harper Excavating, Inc. , 641 F.3d 1216, 1227 (10th Cir. 2011) ); see also Asarco, LLC v. Noranda Mining, Inc. , 844 F.3d 1201, 1207 (10th Cir. 2017) (stating that the moving party faces a "difficult task" given the court's "reluctance to impose the harsh remedy" of judicial estoppel) (quoting Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc. , 767 F.3d 987, 988 (10th Cir. 2014) ); 18B Charles Alan Wright., Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 4477 n.16 (2d ed. Sept. 2018)
*978 ("Although the Tenth Circuit has come to recognize judicial estoppel, it has not come to love it.").
Against this backdrop, I find that Defendant has not met its burden here. I do not see a clear inconsistency between Wascher's trial testimony and his statement to the unemployment bureau-particularly given that an employee's characterization of his separation is not dispositive, as established above. Besides, the Tenth Circuit has imposed a restriction that "judicial estoppel only applies when the position to be estopped is one of fact, not one of law." See BancInsure , 796 F.3d at 1240. Defendant has not convinced me that the statements it juxtaposes are actually factual, as opposed to legal. At a minimum, Defendant is asking me to attribute a legal significance to Wascher's factual statements, which seems to cross (or at least blur) an impermissible line. For all of these reasons, I conclude judicial estoppel does not provide a basis for judgment as a matter of law in Defendant's favor.
CONCLUSION
In sum, the jury reasonably concluded based on the record in this case that Plaintiffs Walker and Wascher resigned from their employment and proved a claim for constructive discharge. Specifically, the "job offer declination" Plaintiffs signed could reasonably be interpreted as a resignation from employment. I will not disturb the jury's factual finding on this issue. Accordingly, Defendant's Renewed Motion for Judgment as a Matter of Law as to Plaintiffs Steven Wascher's and James Walker's Claims Based on Constructive Discharge [filed June 22, 2018; ECF No. 318 ] is denied .

All references to the Trial Transcript are to the Combined Reatltime Transcript for Days 1 through 14.